David J. Jordan, UT Bar No. 1751
Wesley F. Harward, UT Bar No. 15623
Tanner B. Camp, UT Bar No. 17805
Tyler A. Dever, UT Bar No. 15584
Charles D. Morris, UT Bar No. 18058
FOLEY & LARDNER LLP
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: (801) 401-8900
Facsimile: (385) 799-7576
Email: djordan@foley.com
      wharward@foley.com
      tcamp@foley.com
      tdever@foley.com
      charlie.morris@foley.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZACHARY SZYMAKOWSKI, an individual, on behalf of himself and a proposed class of similarly situated F-1 students,<br><br>      Plaintiff,<br><br>v.<br><br>UTAH HIGH SCHOOL ACTIVITIES ASSOCIATION, INC.; ROBERT CUFF, an individual; MARILYN RICHARDS, an individual; AMBER SHILL, an individual; BURKE STAHELI, an individual; DAVID WARREN, an individual; DAVID LUND, an individual; ZACK MCKEE, an individual; PAUL SWEAT, an individual; LUKE RASMUSSEN, an individual; JERRE HOLMES, an individual; JASON SMITH, an individual; MIKE MEES, an individual; DEVIN SMITH, an individual, BRYAN DURST, an individual; PATRICK LAMBERT, an individual; and BRENT STRATE, an individual.<br><br>      Defendants. | **COMPLAINT**<br><br>Case No. 2:24-cv-751 |

Plaintiff, Zachary Szymakowski ("Zac"), is a high school student living in Utah and legally attending a Utah high school on an F-1 visa who files this action individually and on behalf all similarly situated students (collectively "Plaintiffs") and complains as follows:

## INTRODUCTION

1. This complaint arises from the unjust and discriminatory actions taken by the Utah High School Activities Association, Inc. ("UHSAA"), which have adversely impacted Zac, a dedicated and talented international student-athlete, and other foreign students.

2. Zac is a senior at Juan Diego Catholic High School ("Juan Diego") in Draper, Utah. Throughout his time at Juan Diego, Zac has consistently demonstrated his commitment to academic and athletic excellence.

3. Due to the UHSAA's recently implemented rule that prohibits foreign students on F-1 visas from participating in varsity-level athletics without severe restrictions, Zac has been unlawfully barred from playing for his school's varsity football team this fall 2024 season.

4. This rule not only undermines the UHSAA's professed mission relating to student-athletes, but it subjects Zac, and student athletes like him, to discrimination based on national origin and alienage. Zac seeks redress for these violations, emphasizing the importance of equal treatment for all students regardless of their national origin or alienage, and advocating for the integrity of high school athletics as a platform for inclusivity and opportunity.

5. Zac brings this action individually and on behalf of a proposed class of Utah high school student-athletes legally attending Utah high schools on F-1 visas to remedy Defendants' unlawful discrimination based on national origin and alienage.

6. Zac has been required to retain attorneys to prosecute this action on his behalf and is therefore entitled to recover his reasonable attorneys' fees for all claims pursuant to 42 U.S.C. § 1988.

## THE PARTIES

7. **Zac** is a foreign student legally in the State of Utah on an F-1 visa. Zac resides with his host family in Draper, Utah, and is currently a student at Juan Diego. Zac is a senior and a member of Juan Diego's varsity football team, but he is precluded from participating in official competitive play. But for the UHSAA's unlawful rule, as discussed below, Zac would be playing for Juan Diego's varsity football team during this current and ongoing fall 2024 season.

8. **The Utah High School Activities Association Inc. ("UHSAA")** is a domestic nonprofit corporation doing business in the State of Utah. The UHSAA falls within the purview of the Government Records Access Management Act and, on information and belief, receives federal funds through the collection of annual dues from its 159 member schools and/or through the programs it administers. UHSAA's 159 member schools are comprised of private, public, and charter schools in the State of Utah. The UHSAA regulates interscholastic sports and activities throughout the state.

9. **Robert Cuff** is an individual residing in the State of Utah. Mr. Cuff serves as Executive Director of the UHSAA.

10. **Marilyn Richards** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees. Pursuant to the UHSAA Constitution, "[T]he Board of Trustees shall have overall responsibility for the administration of the assets and actions of the Association."

11. **Amber Shill** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

12. **Burke Staheli** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

13. **David Warren** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

14. **David Lund** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

15. **Zack McKee** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

16. **Paul Sweat** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

17. **Jerre Holmes** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

18. **Jason Smith** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

19. **Mike Mees** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

20. **Devin Smith** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

21. **Bryan Durst** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

22. **Patrick Lambert** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

23. **Brent Strate** is an individual residing in the State of Utah and is a member of the UHSAA's Board of Trustees.

## VENUE AND JURISDICTION

24. This is an action under 42 U.S.C. § 1983 for the violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving federal financial assistance.

25. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States, as well as jurisdiction under 42 U.S.C. § 2000d-2. Moreover, this Court has jurisdiction over Zac's request for declaratory relief under 28 U.S.C. §§ 2201–02.

26. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to Zac's claims occurred in this district and Defendants are subject to jurisdiction in this district.

## CLASS ALLEGATIONS

27. Zac, as the named Plaintiff, brings this action on behalf of himself and on behalf of a proposed class of similarly situated international students pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

**Class Definition**

28. Zac asks this court to certify the following class (the "Class"):

All international students attending UHSAA governed high schools in the State of Utah and seeking to play varsity sports for the high school he/she is attending and whose attendance at the high school is authorized pursuant to an F-1 visa.

29. Zac is a member of the proposed Class, and he has been injured by Defendants' discrimination.

**Numerosity**

30. Zac seeks to represent the proposed Class because joinder of all Class members harmed by Defendants' discrimination is impracticable.

31. The joinder of the members of the proposed Class is impracticable because some students on F-1 visas attend Utah high school for only one year or less.

32. The proposed Class includes foreign students who will become members in the future and are unidentifiable, making joinder impracticable.

33. The proposed Class is brought to remedy national origin and alienage discrimination.

34. The proposed Class seeks injunctive and declaratory relief, which is uniquely appropriate to proceed as a class action.

35. Although Zac is suing in his individual capacity, relief awarded in his favor might expire upon his graduation from high school, necessitating relitigating the underlying issues.

36. The proposed Class members are all high school students, most of whom are minors and do not have the legal capacity to sue on their own behalf.

37. The proposed Class members are only permitted to attend Utah high schools for select periods of time pursuant to the terms of their F-1 visas and it is unlikely that many members could sue in an individual capacity and obtain a remedy before they graduate from high school, or their visas expire.

38. Common questions of law and fact predominate the resolution of the claims brought by Zac on behalf of the proposed Class.

39. Zac, on behalf of himself and on behalf of the proposed Class members bring three causes of action: (1) violation of the Equal Protection clause of the Fourteenth Amendment

of the U.S. Constitution; (2) violation of Title VI of the Civil Rights Act of 1964; and (3) declaratory judgment.

40. The resolution of these causes of action will not require any assessment or analysis of any individual's claims.

**Typicality**

41. Zac's claims are typical of the claims of the proposed Class. The type of discrimination Zac has suffered because of Defendants' discrimination is typical of the discrimination which the proposed Class members have suffered, are suffering, and will continue to suffer under the Rule.

42. Zac is a member of the proposed Class in that he is a current international student attending a UHSAA governed Utah high school on an F-1 visa and he is precluded from playing varsity sports because of the UHSAA's discriminatory Rule.

43. Zac and the proposed Class assert the same interest: to be free from unlawful discrimination based on their national origin and alienage and to be permitted to play varsity sports for their high schools, including in state championship tournaments if their teams qualify.

44. Zac and the proposed Class assert the same injury: discrimination based on their national origin and alienage by being precluded from playing varsity sports for UHSAA governed high schools.

45. Zac and the proposed Class member's claims are based on the same legal and remedial theory: that the Defendants' enforcement of the Rule violates the Equal Protection clause of the Fourteenth Amendment, violates Title VI of the Civil Rights Act of 1964, and is preempted under the federal government's exclusive authority over immigration.

**Adequacy of Representation by Class Representative**

46. There are no conflicts among the proposed Class members.

47. Each member of the proposed Class seeks to play on his or her high school's varsity sports team(s).

48. Zac is committed to vigorously prosecuting this action on behalf of the entire Class to resolution.

49. Zac's counsel is experienced, qualified, and competent in federal litigation and will adequately represent the interests of the proposed Class in this action.

50. Zac satisfies the class certification requirement of the Federal Rules of Civil Procedure Rule 23(b)(2) because Defendants have acted, and will continue to act, on ground generally applicable to the class, denying international students attending Utah high schools on F-1 visas an equal opportunity to participate in the same means and manner as non-international students, thereby making final declaratory and injunctive relief appropriate to the Class as a whole.

## FACTUAL BACKGROUND

51. Zac is an eighteen-year-old senior student at Juan Diego, studying in the United States on an F-1 visa from Australia.

**Zac Researches and Ultimately Selects Juan Diego as His School of Choice to Attend in the United States**

52. After researching high schools across the country, Zac settled on Juan Diego because of its excellent record of student success in both academic and athletic achievement.

53. Zac was impressed that Juan Diego offered both rigorous Advanced Placement ("AP") classes and quality varsity level sports competition and facilities.

54. Zac and his parents were also attracted to Juan Diego because of its well-established infrastructure for hosting F-1 students, including its Student and Exchange Visitor Program ("SEVP") certification, relationships with local host families, and a welcoming school community.

55. Zac's parents supported Zac's decision to pursue his educational goals in Utah.

56. Juan Diego has a diverse student population. In 2019, more than 7% of the student population was made up of international students.

57. Zac made the decision to move to America for high school and to attend Juan Diego on his own. He was not recruited by anyone to attend Juan Diego.

58. Zac first became enrolled in Juan Diego as a junior for the 2023-2024 school year.

59. Zac is currently a senior at Juan Diego.

60. Zac recognizes the financial burden associated with college tuition and he has goals of obtaining both academic and athletic scholarships while at Juan Diego so that he can attend college in the United States.

**Zac Has Integrated into the Juan Diego Community.**

61. Zac has no family in Utah and relies solely on the relationships he has made while attending Juan Diego for support.

62. Zac's family has remained in Australia.

63. To assist with alleviating the financial burden of his goals, during the summer months, Zac works part-time as a landscaper so he can pay for his own flights home when he travels home to visit his parents.

64. Zac has spent over a year integrating into the Juan Diego community and transferring to a high school in another state would be overly burdensome on him.

**Zac was Previously a Member of the Juan Diego Varsity Football Team**

65. During his junior year, the 2023-2024 school year, Zac played on Juan Diego's varsity football team as a punter.

66. Zac began the 2023-2024 season as the varsity football team's punter but worked his way onto special teams as a member of the kickoff team as well, permitting him to play two positions for the varsity team.

67. Following the 2023-2024 season, but prior to UHSAA's Rule, as described below, Zac attended and participated in UHSAA authorized varsity football spring training events and practices during spring of 2024. During this time, in addition to continuing his punting duties and playing with the kickoff team, Zac also began practicing as an alternate at the safety position.

68. Zac's hard work has not been limited to only Juan Diego sponsored practices, but he has worked diligently on his own to improve his skills and become the best punter for his team.

69. Zac has attended multiple punting camps hosted by colleges, universities, and organizations. Over the past year, Zac placed third at the University of Utah's specialists camp for punters, second at Weber State University's punt camp, and second at the Punt Factory Seattle camp in March 2024.

70. In the offseason, Zac exercises six-times a week after school to maintain his strength for football season.

71. Participating as a teammate, member, and field player of Juan Diego's varsity football team are very important to Zac.

**Juan Diego's 2023 Season**

72.     The Juan Diego varsity football team is a member of the UHSAA 3A North region and is governed and overseen by the UHSAA.

73.     During the fall 2023 season, Juan Diego's varsity football team played against Highland High School in Salt Lake City, Utah, San Juan High School in San Juan, Utah, Logan High School in Logan, Utah, Manti High School in Manti, Utah, Morgan High School in Morgan, Utah, Union High School in Roosevelt, Utah, Ogden High School in Ogden, Utah, Ben Lomond High School in Ogden, Utah, and Grantsville High School in Grantsville, Utah.

74.     As a member of the 3A North region, Juan Diego's fall 2023 games against Highland High School, San Juan High School and Manti High School were out-of-region games.

75.     Due to the region's small size, with only six member teams, every school within the 3A North region is guaranteed a playoff berth, regardless of their record.

76.     During the fall 2023 season, although Juan Diego was awarded a playoff berth, it lost in the first round of playoffs.

**The UHSAA**

77.     The UHSAA's rules and regulations govern essentially all high schools in the State of Utah. Specifically, the UHSAA governs 159 member schools and over 100,000 participants in high school athletics and activity programs.

78.     According to the UHSAA's "About" page on its website, it is self-described as "the leadership organization for high school athletic and fine arts activities in Utah."

79.     It likewise states that "[s]ince 1927, the UHSAA has led the development of education-based interscholastic athletic and fine arts actives that help students succeed in their

lives." And "[t]he belief is these activities are an essential part of the high school experience and go a long way to improving academic performance and producing better citizens."

80. According to the UHSAA's Constitution, the UHSAA Board of Trustees set and implement the UHSAA's polices.

81. The UHSAA Board of Trustees is made up of fifteen members and currently includes Defendants Marilyn Richards, Amber Shill, Burke Staheli, David Warren, David Lund, Zack McKee, Paul Sweat, Luke Rasmussen, Jerre Holmes, Jason Smith, Mike Mees, Devin Smith, Bryan Durst, Patrick Lambert, and Brent Strate.

82. According to the UHSAA's By-Laws Article 1, Section 1 "Eligibility of Players," "in order to be eligible to participate in [UHSAA] activities, a student must be enrolled in and attend a member high school."

83. Section 1, "Eligibility of Players," does not include a restriction on national origin or alienage.

**The UHSAA Passes and Issues Its Facially Discriminatory Rule**

84. In or around May 1, 2024, the UHSAA Board of Trustees voted unanimously (with one abstention) to limit the participation of foreign students in high school athletics.

85. The rule, published in the UHSAA's Handbook at *Interps & Guidelines 1.9.3 (B)(1)* (the "Rule"), provides:

> An international student with an F-1 visa issued by the U.S. Immigration and Naturalization Service is a student who attends high school in the U.S. An international student with an F-1 visa is only eligible for non-varsity level competition unless the following condition is met: a member school may choose to compete with an F1 student at the varsity level, but the member school is not eligible for post-season competition. Such member school must declare the use of an F1 student at the varsity level prior to the competition start date for that given sport and receive approval from the UHSAA.

86. The post-season play restriction has no exceptions and includes regions, such as Juan Diego's region, where each team is otherwise guaranteed to play in the post-season due to the limited number of teams in the region.

87. Postseason play is an important part of varsity athletics and includes the "playoffs" for championships.

88. The Rule puts players and teams in an impossible position. Either their foreign student(s) cannot play varsity sports, or the team cannot compete in any playoffs or be eligible to play for a state championship.

89. Under the Rule, a student on an F-1 visa will never be permitted to play on a state championship team at any point during the season, not just during the postseason.

90. Indeed, the Rule incentivizes coaches to discriminate against F-1 student athletes in favor of Utah-born students, regardless of merit. Any coach who chooses to allow an F-1 student athlete to play on a varsity team, guarantees that coach's team cannot compete in playoffs or win a state championship.

91. When questioned about the basis of the Rule, the UHSAA pretextually asserted that it was to "protect" international student athletes from being exploited.

92. The UHSAA, however, already has in place an anti-recruiting rule that covers this exact conduct. (*See* Interps & Guidelines 1.9.1 "The recruiting of student-athletes by a member school, coach, coaching staff, of affiliated boosters is considered a serious violation of the UHSAA rules regarding the imposition of undue influence on student for the purpose of athletics.") This rule is separate and distinct from the Rule precluding participation by international students on F-1 visas.

93. In a quote to KSL, a UHSAA spokesperson stated, "It's not a ban … it is a competition-limiting feature which it's being done because there is a sense that the current field has created an imperfect competitive balance."

94. Despite its denials, the Rule is a ban. The Rule bans all F-1 student-athletes from participating in any varsity post season competitions. Indeed, the Rule guarantees that no F-1 student-athlete may win a state championship or compete on a championship team at any point during the postseason or regular season.

95. The UHSAA has even acknowledged its blatant discriminatory intent by acknowledging that "[t]he UHSAA recognizes the concerns of its member schools related to the displacement of Utah student by students from foreign countries."

**Members of the Community Seek to Have the Rule Lifted, Grandfathered, or Withdrawn**

96. Many members of Zac's community reached out to the UHSAA seeking exceptions for Zac or other similarly situated students, including seeking an exception for any foreign student who was already enrolled at a Utah high school on a F-1 visa prior to the passage of the discriminatory Rule.

97. In a letter of response, the UHSAA refused.

98. Counsel for Zac requested the UHSAA lift the rule, explaining in detail its illegality.  Again, the UHSAA refused.

99. UHSAA's Rule restricting F-1 foreign students from participating in varsity sports left Zac in a profoundly unfair position: leave the only community he has in the United States or remain at Juan Diego but be discriminatorily prohibited from playing varsity football.

100. Zac has currently remained at Juan Diego, but his preclusion from playing on the varsity football team, solely because of his status as a foreign student is taking a toll on Zac.

**CLAIMS FOR RELIEF**

**Count I: Violation of the Equal Protection Clause (42 U.S.C. § 1983)**

101. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

102. Beginning on or about May 2, 2024, and continuing daily during the fall 2024 varsity football season, Zac, individually and as a member of the proposed Class, is being subjected to unlawful discrimination by Defendants based on his national origin and alienage.

103. Zac belongs to a suspect class, specifically he is Australian and a non-American born international student, legally in the United States on an F-1 visa.

104. Each proposed Class member likewise belongs to a suspect class, specifically because they are non-U.S. Citizens and non-American born international students, legally in the United States on an F-1 visa.

105. Defendants intentionally discriminated against Zac and the purported Class by passing and implementing UHSAA's *Interps & Guidelines* 1.9.3(B)(1).

106. As a result of Defendants' actions, Zac has been denied the opportunity to play on Juan Diego's varsity football team. Additionally, Zac has been treated differently than other students his age, who are able to play and participate on their varsity football teams because they are Americans.

107. Likewise, as a result of Defendants' actions, members of the proposed Class have been denied the opportunity to play on their school's varsity sports teams for which they are otherwise qualified to play and have been treated differently than other students their age.

108. Zac is qualified to play on Juan Diego's varsity football team and played during the fall 2023-2024 season, as well as in the spring of 2024.

109. But for the unconstitutional Rule, Zac would be playing for Juan Diego's varsity football team for the current fall 2024 season as the starting punter.

110. Juan Diego's varsity football team does not currently have an alternate punter. Rather, the team's place kicker, who handles the kick-off and extra points, has been handling punts in Zac's absence.

111. Defendants acted under color of state law when they voted and passed the UHSAA's Rule. Defendants have further acted under color of state law, weekly, in their continuing enforcement of the Rule. They do so because they regulate Utah public schools.

112. Defendants intentionally discriminated against Plaintiffs based on their alienage (being a foreign student legally in the United States) and/or national origin (being a non-United States born student).

113. As a result of Defendants' discrimination, Plaintiffs have suffered mental and emotional distress, embarrassment, loss of scholarship opportunities, and loss of critical educational opportunities that playing high school varsity athletics permit (as the UHSAA itself recognizes).

114. Defendants' actions constitute a violation of the Equal Protection Clause of the Fourteenth Amendment.

115. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages, including mental and emotional distress and loss of athletic and scholarship opportunities.

### Count II: Violation of Title VI of the Civil Rights Act of 1964

116. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

117. Upon information and belief, the UHSAA and/or its member schools receive federal financial assistance through their participation in Utah high school programs, athletics, and activities. As a recipient of such assistance, member schools are subject to the provisions of Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin in programs that receive federal financial assistance.

118. The UHSAA governs and oversees all member schools, and the member schools are required to adhere to the UHSAA's By-laws.

119. Programs covered under Title VI include, but are not limited to, admissions, recruitment, financial aid, academic programs, student treatment and services, counseling and guidance, discipline, classroom assignment, grading, vocational education, recreation, physical education, athletics, and housing.

120. Beginning upon the passage of the UHSAA's Rule and continuing daily, Plaintiffs have been subjected to discriminatory treatment by Defendants on the basis of national origin and alienage, specifically, they have been subject to discrimination because they are not of United States origin.

121. Defendants' actions have had a direct impact on Plaintiffs because of their national origin and alienage.

122. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages including mental and emotional distress and loss of athletic and scholarship opportunities.

## Count III: Declaratory Judgment

123. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs.

124. Pursuant to Article I of the Constitution, control over immigration issues is reserved exclusively to the federal government, and a state has no power to interfere. U.S.Const., Art. I, s 8, cl. 4.

125. The F-1 visa program is administered and controlled by the federal government.

126. The UHSAA's Rule impairs the rights of foreign students lawfully in the United States upon the invitation of the federal government under the F-1 visa program and interferes with the federal government's exclusive authority and control over the F-1 visa program.

127. The Rule is unconstitutional and preempted under federal law.

128. Because the Rule is unconstitutional and preempted under federal law, Defendants' actions to pass and enforce the UHSAA's Rule are unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

A. Declare the UHSAA's Rule to be unconstitutional;

B. Declare the UHSAA's Rule to be preempted under federal law;

C. Declare that Defendants' actions violate Plaintiffs' rights under the Equal Protection Clause of the 14th Amendment;

D. Declare that Defendants' discriminatory actions violate Plaintiffs' rights under 42 U.S.C. § 1983.

E. Declare that the Defendants' actions violate Plaintiffs' rights under Title VI of the Civil Rights Act of 1964;

F. Immediately enjoin the Defendants from enforcing the UHSAA's Rule (*Interps & Guidelines 1.9.3 (B)(1)*).

G. Strike the UHSAA's Rule (*Interps & Guidelines 1.9.3 (B)(1)*) from the UHSAA's Handbook.

H. Award compensatory damages in an amount to be determined at trial;

I. Award punitive damages against Defendants;

J. Award reasonable attorneys' fees and costs as permitted under 42 U.S.C. §§ 1983, 1988;

K. Grant any further relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 7, 2024          Respectfully submitted,

                                               */s/ David J. Jordan*
                                              David J. Jordan
                                              Wesley F. Harward
                                              Tanner B. Camp
                                              Tyler A. Dever
                                              Charles D. Morris
                                              FOLEY & LARDNER LLP

                                              *Attorneys for Plaintiff*